## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BIRDA J. MARSHALL** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CONNECTICUT GENERAL LIFE** | : | **NO. 02-3662** |
| **INSURANCE COMPANY** | : | |

## RESPONSE BRIEF OF DEFENDANT,
## CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**WHITE AND WILLIAMS LLP**

Elizabeth A. Venditta, Esquire
Attorney I.D. No. 36000
1800 One Liberty Place
Philadelphia, PA 19103
215-864-6392

Attorneys for Defendant,
Connecticut General Life Insurance
Company

November 29, 2004

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................ii,iii

I.    INTRODUCTION.................................................................................... 1

II.   RESPONSE TO PLAINTIFF'S "FACTS".............................................. 1

III.  RESPONSE TO PLAINTIFF'S "LEGAL STANDARDS" ARGUMENT................. 7

      A.   Summary Judgment Standard Different in ERISA Review Context ...................... 7

      B.   Plaintiff Concedes That The Highly Discretionary, Arbitrary And Capricious
           Standard of Review Is Applicable............................................................. 9

IV.   RESPONSE TO PLAINTIFF'S "ARGUMENT" ...................................... 10

           1.   Plaintiff's Transferable Skills Analysis Argument is Flawed.................... 14

           2.   Connecticut General Was Not Required to Order an Independent
                Medical Examination ................................................................ 20

           3.   Significant Difference in Calculus of Social Security Decision
                Distinguishes Same and Plaintiff's Reliance Thereon is Misplaced......... 21

           4.   Attorney Files Second Appeal But Files Suit Before Second Appeal
                Review Completed .................................................................... 22

V.    CONCLUSION....................................................................................... 23

## TABLE OF AUTHORITIES

### CASES

Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40 (3d Cir. 1993) .................................. 8,9,11

Adamo v. Anchor Hocking Corp., 720 F. Supp. 49l (W.D. Pa. 1989) ............................ 11

Bendixen v. Standard Insurance Co., 185 F.3d 939 (9th Cir. 1999) .................................. 8

Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S. Ct. 1965,
    155 L. Ed. 2d 1034 (2003) .......................................................................... 16

Forchic v. Lippincott, 1999 U.S. Dist. LEXIS 21419 (D.N.J. 1999) ................................ 21

George W. Mitchell v. Eastman Kodak Co., 113 F.3d 433 (3d Cir. 1997) ......................... 9

Goodermote v. Sec. of HHS, 690 F.2d 5 (1st Cir. 1982) .................................................. 21

Leahy v. Raytheon Co., 2002 U.S. App. LEXIS §25903 (1st Cir. Dec. 17,
    2002) ........................................................................................................ 21

Leonardo-Barone v. Fortis Benefits Ins. Co., 2000 WL 33666891 (E.D.
    Pa. Dec. 28, 2000) ..................................................................................... 20

Lucash v. Strick Corp., 602 F. Supp. 430 (E.D. Pa. 1984), aff'd, 760 F. 2d
    259 (3d Cir. 1985) ....................................................................................... 11

Madden v. ITT Long Term Disability Plan, 914 F.2d 1279 (9th Cir. 1990) .................. 21

Miller v. Metropolitan Life Ins. Co., 925 F.2d 979 (6th Cir. 1991) .................................. 11

Nichols v. Verizon Communications, Inc., 2003 WL 22384772 (3d Cir.
    Oct. 20, 2003) ............................................................................................. 16

Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415 (1st
    Cir. 2000) ................................................................................................... 21

Russell v. Paul Revere Life Ins. Co., 148 F. Supp. 2d 392 (D. Del. 2001) .................. 21,22

Schlegel v. Life Insurance Co. of N. America, 269 F. Supp. 2d 612
    (E.D. Pa. 2003) ...................................................................................... 11,15,16

Shaw v. Chater, 221 F.3d 126 (2d Cir. 2000) ................................................................ 21

Estate of Shockley v. Alyeska Pipeline Serv. Co., 130 F.3d 403 (9th Cir. 1997)...................................................................................................... 8

Starita v. NYCare Health Plan, Inc., 2000 U.S. Dist. LEXIS 3898 (E.D. Pa. Mar. 29, 2000)................................................................................ 5,21,22

Ursic v. Bethlehem Mines, 719 F.2d 670 (3d Cir. 1983).................................... 5

## STATUTES

20 C.F.R. §§ 404.1520, 416.920 ...................................................................... 21

Fed.R.Civ.P. 26(a)(1) ...................................................................................... 7

Fed.R.Civ.P. 567 .............................................................................................. 7

iii

## I.   INTRODUCTION

Defendant, Connecticut General Life Insurance Company ("Responding Defendant," "Defendant" or "Connecticut General"), by and through its attorneys, White and Williams LLP, files this Response Brief in Opposition to Plaintiff's Motion for Summary Judgment. For all the reasons set forth herein and in Connecticut General's Statement of Material Facts/Motion for Summary Judgment and Brief in Support, which are incorporated herein by reference, Connecticut General respectfully submits that it, not the Plaintiff, is entitled to judgment in this action as a matter of law. Plaintiff's Motion for Summary Judgment should be denied as, *inter alia,* Connecticut General's claims decision was properly made on a record amply demonstrating that Marshall did not meet the requirements for "Eligibility for Benefits" as defined by the Plan and the determination was made with a reasonable basis in fact supporting the decision. Connecticut General, not the Plaintiff, is entitled to judgment as a matter of law, as there was no abuse of discretion under the facts and circumstances of this case. Under the admittedly applicable arbitrary and capricious standard of review, Connecticut General is entitled to judgment and Plaintiff's Complaint should be dismissed.

## II.   RESPONSE TO PLAINTIFF'S "FACTS"

Contrary to the Court's "Motions Practices and Procedures," p.4, ¶ 4, requiring that "[e]very factual assertion contained in a brief or memorandum must be supported by a specific page citation to the record," Plaintiff has failed and/or refused to provide appropriate citation to many of the statements alleged in her "Facts" section. Further, the scant citation that is given by Plaintiff often does not support the "fact" alleged.

Plaintiff claims, with no supporting citation to the record, that her symptoms of headaches, dizziness, nausea and lightheadedness made it impossible for her to continue in her

employment. The record reveals, however, that according to her own treating physicians, Marshall could work and that she learned to treat the different aspects of her headaches and migraines with medication. See Connecticut General's Statement of Material Facts, ¶¶ 32, 37 and 40, with Exhibits[1] "14," (CBM00364), "19," (CBM00339-340), and "22," (CBM00294-318). Further, a Functional Capacity Evaluation and subsequent Transferable Skills Analysis resulted in locating five (5) jobs, including Marshall's own former occupation, of which she was capable, meeting the requirements for transferability. Exhibit "20, " (CBM00319-320).

Plaintiff's unsupported claim of experiencing tingling and numbness with the left leg/left foot pain, as highlighted in her "Facts" section, are curious, as such claims were not made during the pendency of her LTD claim and not alleged to be disabling during the time the LTD claim was pending decision. Little wonder why there is no citation to the record in support.

Another unsupported "Fact" Plaintiff alleges, is that Connecticut General administered the Lucent Sickness and Accident Disability Plan, which she identifies as the Lucent "STD" Plan. This is simply not true and there is and could be no support for such a theory anywhere in the record. Connecticut General provided claims administrative services in connection with the Lucent **LTD** Plan, but not the Lucent **STD** Plan.

Plaintiff continues by contending on p. 4 of her Memorandum that a "host of physicians" with which she treated experienced difficulty in arriving at a diagnosis. This "fact" actually supports Defendant's determination. Marshall's complaints were subjective and, further, while it is true that she underwent a variety of diagnostic tests by these physicians as she claims, it is equally true that most of this testing was reported as normal or negative in result. See Defendant's Statement of Material Facts.

---

[1]     References to "Exhibits" in this Response Brief in Opposition will be to the Exhibits filed with Connecticut General's Statement of Material Facts/Motion for Summary Judgment, with the Bates-numbers referencing the Bates-numbered claims file/administrative record produced as the Appendix to same.

Plaintiff also lists the medications she was prescribed but falsely claims, again with no citation to the record, that such were unsuccessful in alleviating her symptoms. To the contrary, as for but one example, Evelyn R. Flores, M.D., her primary treating neurologist wrote on April 17, 2001 that Marshall "has learned to treat the different aspects of her headache with Cyclobenzaprine 10mg PRN and Vertiginous Migraines with Imitrex 50mg PRN." Exhibit "19," (CBM00339-340).

Plaintiff suggests that cervical x-rays and an MRI showed degenerative changes and disc bulges, but fails to mention, again, that another of her treating neurologists/neurosurgeons, P. G. Perkins, M.D., did not find these persuasive and, in fact, minimized their value in diagnosing Marshall's subjective symptoms writing "I find it difficult to relate all this to disc bulging in the cervical spine." Exhibit "19," (CBM00331-332).

Plaintiff lists in bold on the top of p. 5 of her Memorandum what she describes as "Plaintiff's eventual diagnosis," however the citation to the record she gives for this alleged diagnosis does not support her statement. Dr. Flores did not give such a diagnosis as Plaintiff claims and the citation given is to the very report of Dr. Flores wherein she reports that Marshall "has learned to treat the different aspects of her headache with Cyclobenzaprine 10mg PRN and Vertiginous Migraines with Imitrex 50mg PRN." See, CBM00217-218, as cited by Plaintiff.

Plaintiff further complains, again without record support, that she lived under a cloud of not knowing when she would get a headache, but, again, clearly refuses to acknowledge that the medications prescribed by Dr. Flores, as highlighted above to be taken PRN or "as needed" when a headache was experienced, treated the condition thus enabling her to work. See, again, Exhibit "19," (CBM00339-340).

3

Plaintiff references Dr. Perkins' letter from September, 2000, (well prior to the claim submitted for LTD benefits), which while indicating that at that time her symptoms were a problem, also significantly notes that Marshall's symptoms were relieved by Tylenol #3. That same letter is also the very one where Dr. Perkins concedes that he finds it difficult to relate Marshall's subjective symptoms to any cervical spine condition. Exhibit "19," (CBM00331-332). Dr. Perkins, finding nothing further to do, ultimately discharges Marshall from his care. Dr. Flores' later report of April 17, 2001 also, as mentioned above, confirms that the symptoms are relieved by medication. Dr. Flores does **not** indicate that Marshall is disabled from working. Exhibit "14," (CBM00364); Exhibit "19," (CBM00339-340).

Plaintiff claims the report of Ear, Nose and Throat doctor, Charles Lutz, M.D., supports her claim but, in actuality, his report merely lists the *subjective symptoms as reported by Plaintiff* and simply repeats Plaintiff's own contention that the symptoms interfere with her activities. Dr. Lutz' objective testing/examination of Plaintiff is all reported as normal, except for a "painful area" or tenderness of the neck (which of course is again a subjective report from the Plaintiff which Dr. Perkins discounted as a cause of her problems).

From the foregoing, it is clear that Plaintiff is simply wrong in her conclusion on p. 6 of her Memorandum that medication did not alleviate her problems. To the contrary, both Dr. Flores and Dr. Perkins had found that medication did relieve her symptoms. In fact, Plaintiff herself reported by September 7, 2000 that the Cyclobenzaprine was "helping" and that the headaches "were not quite as bad and she doesn't have them every day anymore." (CBM00394).

Continuing, Plaintiff's claim that as the STD administrator Connecticut General directed that Plaintiff apply for Social Security is inaccurate for, as noted above, Connecticut General was **not** the STD administrator and nowhere in the record is Plaintiff's false allegation in this regard

4

supported. Connecticut General, in reviewing Plaintiff's claim was aware and did acknowledge Plaintiff's award of Social Security disability benefits and Plaintiff admits that Connecticut General references same as having been part of its review. There is no requirement, however, that weight be given to this Social Security award as Plaintiff argues. The calculus of decision in a Social Security case is much different from that under the Group LTD policy at issue and a claims administrator is not bound by a Social Security decision. Starita v. NYCare Health Plan, Inc., 2000 U.S. Dist. LEXIS 3898 (E.D. Pa. Mar. 29, 2000). See more on this issue in legal argument section IV. 3, below.

Plaintiff further impetuously portends to calculate her benefit, however any benefit calculation should be left, pursuant to the plan, to the claims administrator (particularly where Social Security offset is an issue) and any alleged calculation of benefit or claim of entitlement to attorneys fees, with no consideration give to the five factor test of Ursic v. Bethlehem Mines, 719 F.2d 670 (3d Cir. 1983), is entirely premature and improper.

Plaintiff filed two appeals in this matter after her claim for benefits was denied as she failed to meet the requirements for "Eligibility for Benefits" under the plan as the evidence did not support the contention that Marshall was *unable to do any job for any employer* for which she was qualified or might reasonably become qualified because of her purported sickness. Marshall and her counsel were specifically advised by Connecticut General on multiple occasions that *"it is Ms. Marshall's responsibility to provide any additional information that she feels will support her appeal for long term disability benefits."* Exhibits "26," (CBM00278-279), "27," (CBM00274), "33," (CBM00475-76). While it is true that Attorney Sagot, submitted medical records received by Connecticut General on January 15, 2002, these were duplicates and *were already part of the administrative record previously reviewed.* Exhibit "28," (CBM00162-

5

273). No additional information regarding Marshall's functionality had been provided on appeal.

Connecticut General had not been provided with documentation that supported Marshall's

inability to perform her occupation as a production operation. Her own treating neurologist, Dr.

Flores, provided an opinion confirming the results of the Functional Capacity Evaluation and that

Marshall was capable of performing her occupation.

On January 29, 2002 Connecticut General wrote to Marshall summarizing pertinent

portions of the Lucent LTD Plan, defining disability under said Plan, summarizing the medical

documentation through Medical Assessment and, in summary, concluded as follows:

> A review of the documentation on file shows that we have not been
> provided with documentation that supports your inability to
> perform any occupation. Dr. Flores previously indicated that your
> restrictions consist of no undue neck tension/flexion or lifting over
> 10 pounds. These restrictions were confirmed by the results of the
> Functional Capacity Evaluation and to date no additional
> information has been provided that refutes your level of
> functionality. Based on these restrictions, your education, work
> history and training, suitable occupations were identified. On
> appeal, we have not been provided with any documentation that
> supports your inability to perform those above-mentioned
> occupations. We are not disputing that you may be limited in
> some way, we are simply stating that your limitations don't
> preclude you from performing other occupations. As a result, we
> are unable to render a favorable decision and your appeal has been
> denied.

Exhibit "30," (CBM00155-158).

Thereafter, on March 5, 2002 Connecticut General received correspondence from

Attorney Sagot enclosing the Social Security Administration's file and asking for review of that

file, threatening a lawsuit if Connecticut General continued to uphold its denial of Marshall's

claim. The medical records and reports received, however, again duplicated the medical

documentation already contained in Marshall's administrative record/claims file with

Connecticut General.

6

In response, Connecticut General wrote to Marshall on March 8, 2002 acknowledging receipt of the additional information and advising that the claim would be forwarded to the Disability Appeals Team in Dallas, Texas. See Connecticut General correspondence of 3/8/02, Exhibit "32," (CBM00064-65). Thereafter, on March 20, 2002, Connecticut General's Appeal Claim Examiner in Dallas, Texas contacted Marshall acknowledging the request for review of her claim and *again* asking that she execute an authorization allowing the company to speak with Attorney Sagot. Marshall was *again* asked to submit any additional information she wished reviewed. Exhibit "33," (CBM00475-76). Connecticut General was, though, again ignored and prior to the Dallas Appeal Team's review of Marshall's claim, and having submitted nothing further in support of the request for a second review, Attorney Sagot and Marshall filed suit on June 7, 2002.

## III.    RESPONSE TO PLAINTIFF'S "LEGAL STANDARDS" ARGUMENT

### A.    Summary Judgment Standard Different in ERISA Review Context

Plaintiff concedes in this ERISA-based matter that the evidence should be derived *only* from the administrative record of Plaintiff's claim (which has been submitted as an Appendix to Defendant's Statement of Material Facts/Motion for Summary Judgment and Bates-numbered). Plaintiff's Brief, p.7.

While a Motion for Summary Judgment under Fed.R.Civ.P. 56 is the mechanism by which ERISA benefits cases are brought before the Court for resolution, the summary judgment standard is somewhat different in the ERISA review context. Just as Fed.R.Civ.P. 26(a)(1)(E) exempts actions for review on an administrative record, such as the instant review under ERISA, from the typically required disclosures, similarly, a judgment on the administrative record is a

7

somewhat different Rule 56 standard in an ERISA case—a judgment on the administrative record.

The Ninth Circuit provides persuasive authority holding that the ordinary summary judgment standard of review is inappropriate in an ERISA case and that the usual tests for summary judgment simply do not apply in an ERISA context where the decision to deny benefits is reviewed for abuse of discretion. As was held in Bendixen v. Standard Insurance Co., 185 F.3d 939 (9th Cir. 1999) in such ERISA cases

> a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.

Id. at 942. If the administrator's decision is "based upon a reasonable interpretation of the plan's terms and was made in good faith," we will uphold it. Id. at 944 (quoting Estate of Shockley v. Alyeska Pipeline Serv. Co., 130 F.3d 403, 405 (9th Cir. 1997) (internal quotation marks omitted).

In the instant matter, regardless of whether the court uses the ordinary summary judgment standard of review or the reasoning of the Ninth Circuit, the end result is the same: this matter is ripe for adjudication as Responding Defendant's decision as evidenced by the administrative record was clearly reasonable, certainly not arbitrary and capricious, and must be upheld as a matter of law. Plaintiff's motion should be denied and Defendant's granted.

As stated repeatedly, under the abuse of discretion standard, the Court may overturn the administrator's decision only if it was made "without reason" or is "unsupported by substantial evidence or erroneous as a matter of law." Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (citations omitted). These principles are applicable even if a third party or this Court may have reached a different conclusion. A fiduciary's benefit decision is not arbitrary

8

and capricious simply because another decision may also have been logical, or because another decision may have been a better decision. *Id.*

**B.    Plaintiff Concedes That The Highly Discretionary, Arbitrary And Capricious Standard of Review Is Applicable**

Plaintiff concedes that the arbitrary and capricious standard of review is applicable to her claim, unheightened and giving full deference. Plaintiff's Brief, p.8. Plaintiff also concedes that "'[u]nder that standard, the administrator's interpretation of the plan will not be disturbed if reasonable'" *Id.* Plaintiff's burden is extremely high under this standard and she agrees with Defendant's argument (repeating citations from Plaintiff's Brief), that

> [t]he scope of this review is narrow, and the court is not free to substitute its own judgment for that of the administrator to determine a participant's eligibility for plan benefits. George W. Mitchell v. Eastman Kodak Co., 113 F.3d 433, 438 (3d Cir. 1997). Accordingly, deferring to the plan administrator, a court will not reverse the administrator's decision unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Abnathya v. Hoffman-LaRouche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)."

Plaintiff's Brief, p. 8. Plaintiff continues, and Connecticut General heartily agrees, that

> Since the Plan documents clearly indicate that the Plan Administrator "has full discretionary authority and power to control and manage all aspects of the LTD Plan," specifically including the determination of benefits eligibility, (Ex. 4/p.00016), the court should apply the arbitrary and capricious standard.

*Id.*, Plaintiff's Brief, p.8.

9

## IV.   RESPONSE TO PLAINTIFF'S "ARGUMENT"

As mentioned above, Plaintiff concedes that the highly deferential, unadulterated, arbitrary and capricious standard of review is applicable herein. Thus Plaintiff, admittedly, has an extremely high burden.

The Lucent LTD Plan clearly grants Connecticut General discretion to make the determinations at issue. This Court's review should therefore be under the unadulterated discretionary, deferential arbitrary and capricious standard of review and Connecticut General's decision to deny Marshall's claim for benefits must be upheld unless arbitrary and capricious.

The Lucent LTD Plan gives Connecticut General discretion with final, binding and conclusive authority and the burden is on Marshall to prove that Connecticut General's decision was without reason, unsupported by substantial evidence or erroneous as a matter of law, which is specifically and unequivocally denied, and cannot be supported by the record herein.

Under the applicable plan, Marshall's submission was not sufficient to support her claim of entitlement to long-term disability benefits. Marshall failed to meet the requirements for Eligibility for Benefits as defined in the Lucent LTD Plan as the evidence did not support the contention that Marshall was *unable to do any job for any employer* for which she was qualified or might reasonably become qualified because of her claimed condition. The medical evidence did not support disability from performing any occupation and her own treating physicians did not restrict or limit her from performing any occupation. Notably, the Social Security determination confirmed that Marshall had not been disabled for 52 weeks as required by the Lucent LTD Plan. The denial of benefits was proper and, therefore, summary judgment is appropriate. Connecticut General had Plaintiff's claim thoroughly reviewed through multiple levels, by medical consultants and occupational consultants, and with the benefit of a Functional

10

Capacity Evaluation and a Transferable Skills Analysis. The claims decision was made on the record before Connecticut General, amply demonstrating that Marshall did not meet the requirements for "Eligibility for Benefits" as defined by the Plan and with a reasonable basis in fact supporting the decision, and, therefore, summary judgment for Connecticut General, not the Plaintiff, is appropriate. There was no abuse of discretion here.

Under the deferential arbitrary and capricious standard, as mentioned above, a district court may overturn a claims administrator's decision only if it is "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Further, "'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" Abnathya v. Hoffman-La Roche, Inc., *supra*, at 45 (3d Cir. 1991) (*citing* Adamo v. Anchor Hocking Corp., 720 F. Supp. 491, 500 (W.D. Pa. 1989); Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 983 (6th Cir. 1991); Lucash v. Strick Corp., 602 F. Supp. 430, 434 (E.D. Pa. 1984), *aff'd*, 760 F. 2d 259 (3d Cir. 1985)). Also see Schlegel v. Life Insurance Co. of N. America, 269 F.Supp.2d 612 (E.D. Pa. 2003).

Plaintiff argues that Connecticut General's decision misconstrued certain evidence and was selective in citing to evidence in the record that supported its decision. Plaintiff concedes, as she must, however, that the administrative record does contain evidence supporting Connecticut General's determination and Connecticut General contends such evidence overwhelmingly supports its decision. That evidence and administrative record, which has been set forth in detail in Connecticut General's Statement of Material Facts, with detailed citation to the record and which is incorporated herein by reference, more than amply demonstrates that Connecticut General acted reasonably in that it:

- requested, followed-up and acquired pertinent medical records including requests to Marshall's treating physicians for response to specific questions regarding the

11

claim and Physical Ability Assessments, Exhibits 6, 7, 12, 13, 14, 16, 18, 19, 22, 25, 26, 27, 28, 33 and CBM00066-152;

- requested that Marshall and her counsel supply any medical records or other documentation in support of the claim for review, Exhibits 6, 7, 16, 25, 26, 27 and 33;

- was in contact with Marshall's employer, Lucent, regarding Marshall's medical absence claim, job description, Functional Capacity Evaluation and other information, Exhibits 5, 12 and 14;

- was in frequent communication with Marshall and/or Marshall's counsel, regarding the claim, Exhibits 6, 7, 8, 10, 11, 16, 23, 25, 26, 27, 32 and 33;

- acquired the Functional Capacity Evaluation Summary Report and data, Exhibits 14 and 20;

- reviewed the claim with Medical and Occupational Consultants, Exhibits 17 and 21;

- acquired a Transferable Skills Analysis identifying multiple jobs, including Marshall's own job, as meeting the requirements for transferability, Exhibit 20;

- wrote to Marshall reviewing with her the definition of disability and the requirements of the Lucent LTD Plan, summarizing in a Medical Assessment the medical records received, the Functional Capacity Evaluation and the Transferable Skills Analysis, and concluding, *inter alia,* that based on the foregoing Marshall did not satisfy the definition of total disability in the Lucent LTD Plan and that she retained the ability to perform other work, Exhibit 23;

- acknowledged an appeal of the determination and sought additional medical documentation for review on appeal, Exhibits 25, 26 and 27;

- completed an Appeal Review on Appeal Team Referral in Pittsburgh, Exhibit 29;

- wrote to Marshall again summarizing pertinent portions of the Lucent LTD Plan defining disability under said Plan, summarizing the medical documentation through Medical Assessment and the conclusion, *inter alia,* that the documentation on file does not show that Marshall is unable to perform any occupation, that no information has been provided to refute Marshall's level of functionality as provided by her treating physician, Dr. Flores, and the Functional Capacity Evaluation, or documentation that supports an inability to perform the occupations identified in the Transferable Skills Analysis, and advising the appeal was denied, Exhibit 30;

- received the Social Security Administration file and correspondence from Marshall's counsel indicating Marshall could have done other work from July 9, 2000 to January 25, 2001, Exhibit 31;

- acknowledged Marshall's second appeal and forwarded Marshall's claim to its Disability Appeals Team in Dallas, Texas, Exhibits 32 and 33; and

- received suit filed by Marshall's counsel, nothing further having been submitted in response to specific requests for purposes of second review and prior to Dallas Appeal Team's review.

There was no abuse of discretion here as Connecticut General reasonably concluded that the evidence did not establish that Marshall was eligible for benefits. The evidence presented did not establish that Marshall was disabled under the terms of the Plan. The denial of benefits was based on substantial evidence in the record.

Plaintiff misstates the medical evidence claiming, but without citing to evidence in support, that diagnostic testing produced by five physicians support her claim – NOT SO! As set forth above and in Connecticut General's specific Statement of Material Facts, most of the diagnostic testing regarding Plaintiff's subjective symptoms was returned with normal readings or negative results. The positive test results in regard to the degenerative and other changes in Plaintiff's cervical spine were discounted by her treating neurologist/ neurosurgeon, Dr. Perkins, (the physician from whom she sought expertise in that regard) as doubtfully related to her subjective complaints of headache and dizziness. Exhibit "19," (CBM00331-332). Marshall herself admitted that Dr. Perkins did not think her headaches and dizziness were neck-related. (CBM00408). That Plaintiff's counsel thinks they were is of absolutely no import – her physicians, particularly the specialist with which she treated, did not identify any diagnostic testing that was recognized as directly supporting her subjective complaints. Exhibit "19," (CBM00331-332).

13

Connecticut General's denial of benefits was neither arbitrary, capricious or without rational basis. The claims decision was made on the record before the claims administrator, with a reasonable basis. The decision was not only rational, but also correct, based upon the evidence available to Connecticut General at the time the decision was made. There was no abuse of discretion here. Connecticut General's decision should be upheld by this court.

### 1. Plaintiff's Transferable Skills Analysis Argument is Flawed

While conceding that the Transferable Skills Analysis ("TSA") concluded that "Plaintiff remained qualified for various enumerated occupations defined in the <u>Dictionary of Occupational Titles</u>," (Plaintiff's Brief, p.9), Plaintiff begins her argument with respect to the TSA by misquoting the applicable plan language setting forth the Plan's "Eligibility for Benefits" requirements. The complete definition reads as follows:

> ### *Eligibility for Benefits*
>
> To receive LTD benefits, you do not have to be hospitalized or confined to a home, but you must meet the following requirements:
>
> - You must be considered disabled under the LTD Plan. **This may differ from being considered disabled for purposes of the Sickness and Accident Disability Benefit Plan,** Lucent Technologies Inc. Pension Plan, workers' compensation, Social Security or other benefits you might be entitled to under a private insurance plan.
>
> - **You must have been disabled for 52 weeks**, receiving sickness disability benefits under the **Sickness and Accident Disability Benefit Plan.**
>
> - **You must be unable to do any job for any employer for which you're qualified**, or may reasonably become qualified by training, education or experience, other than one that pays less than 50% of your **eligible base pay** at the time you became disabled.

- **At all times during your disability, you must be under a physician's care and following the recommended care and course of treatment** to receive benefits.

- You may be required to submit proof of your disability to the Claims Administrator from time to time.

- **The Claims Administrator will determine the extent of your disability based on medical evidence** and reserves the right to have a physician of his or her choice examine you.

Exhibit "4," Eligibility for Benefits, p. 11 (CBM00011), (emphasis supplied).

Notably, the Lucent LTD Plan has a benefit waiting period that *requires* that an eligible employee "must" be "disabled for 52 weeks" and receive 52 weeks of short-term disability benefits under the Lucent Sickness and Accident Disability Benefit Plan before being eligible for benefits under the Lucent LTD Plan. The Plan warns, however, that being considered "disabled" under the Lucent Sickness and Accident Disability Benefit Plan or under Social Security "may differ" from "disability" under the Lucent LTD Plan. Further to be considered "disabled" under the Lucent LTD Plan the employee *"must be unable to do **any job** for **any employer** for which ... qualified" and "[a]t all times during [the] disability must be under a physician's care and following the recommended care and course of treatment to receive benefits." Id.*

The TSA identified a number of jobs for which Plaintiff would be qualified, which Plaintiff also concedes. Plaintiff is critical, however, of the TSA claiming that the fact that its author, Rehabilitation Specialist, Marion Reznik, M.Ed., CRC, CCM, had a complete understanding of the Plan's definition of "Eligibility for Benefits" is an indication of bias. This is a ludicrous contention. In order to prepare an appropriate TSA it was essential that the Rehabilitation Specialist have the complete facts and evidence necessary, including the salary requirements of which Plaintiff is critical, to determine positions meeting the requirements for transferability. Plaintiff argues that the TSA should have been done in a vacuum without any

15

knowledge as to Marshall's skills, education, physical abilities and salary requirements within a "Light" classification of work. Query how Plaintiff expects an analysis of transferability to be made without such information.

Connecticut General was free to rely on the opinions of its consultants, such as Rehabilitation Specialist, Ms. Reznik, and not on Plaintiff's treating physicians (though in this matter Plaintiff's treating physicians substantially support Defendant's determination). In the ERISA context, "plan administrators are not obliged to accord special deference to the opinions of treating physicians." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S. Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003). Not only is an administrator justified in placing reliance on the opinions of its own consultants, it need not provide a special explanation of its decision to do so. Id. Also see Nichols v. Verizon Communications, Inc., 2003 WL 22384772 at *2 (3d Cir. Oct. 20, 2003) (not precedential) and Schlegel v. Life Ins. Co. of North America, 269 F.Supp.2d 612, 627 (E.D. Pa. 2003).

Admittedly the TSA was based, *inter alia,* on a Functional Capacity Evaluation, but what Plaintiff fails to accept and chooses not to recognize is that this Functional Capacity Evaluation was one that was ordered by Plaintiff's *own Attending Physician, Dr. Joseph Kang*. He ordered such because, in his words "I have no clear idea of diagnosis. Dizziness is such a subjective symptom." Exhibit "14," (CBM00401-412 and 361-391). Thus, the TSA was based significantly on a Functional Capacity Evaluation acquired and submitted by Plaintiff's own Dr. Kang. Certainly there can be no bias claimed in connection with that critical aspect of the TSA.

Plaintiff further claims that the TSA makes no specific reference (as though there is a requirement that it must) to the medical record or diagnostic testing, which, in addition to being inaccurate (as the TSA does identify the purported diagnosis and references "information in the

16

claims file"), also shows a lack of understanding as to the TSA's purpose. The TSA, *inter alia,* took the Functional Capacity Evaluation that Plaintiff's own Dr. Kang ordered and submitted, and with the physical abilities listed therein and utilizing Marshall's self-reported education and work history, and the employer-supplied job description, identified jobs, including Marshall's own former occupation, meeting the requirements for transferability.

Plaintiff is critical of the jobs located by the Rehabilitation Specialist as listed in the TSA report, however, respectfully, neither Plaintiff nor her counsel possess the expertise to refute the TSA and Plaintiff submitted no Rehabilitation expertise or other specific evidence contradicting same. Since based on a Functional Capacity Evaluation acquired and submitted by Plaintiff's own Dr. Kang, Plaintiff is hard pressed to refute the TSA's findings. The evidence simply does not support Plaintiff's claim that the various jobs identified in the TSA, including her own occupation, were unable to be performed by her as the Functional Capacity Evaluation and other evidence in the claim file supported the conclusion that she could perform those jobs. The evidence shows that Plaintiff's subjective symptoms were ameliorated, if not eliminated, by the medications prescribed and taken on an as-needed basis, as admitted by Plaintiff herself. The Functional Capacity Evaluation noted that Marshall was able to sit for 5.5 plus hours (continuously), stand for up to 2.5 hours (occasionally), and walk for 2.5 to 5.5 hours (frequently) in an eight hour day, as well as, having the ability to lift up to 20 lbs. from floor to waist, up to 10 lbs. from waist to overhead and up to 15 lbs. horizontally on an occasional basis, along with crawling, kneeling, crouching, squatting, and coordination of upper extremities on a continuous basis, stair climbing on a frequent basis, and balancing and ladder climbing on an occasional basis, allowing a "Sedentary" to "Light" work capacity. Exhibit "14," (CBM00382-386). Despite multiple requests for submission of any additional evidence, no additional

17

information regarding Marshall's functionality was ever submitted by Marshall or her counsel even through the appeals.

Contrary to Plaintiff's absurd assertion in light of the record evidence, Connecticut General is **not** arguing that Plaintiff is disabled from her own occupation. To the contrary, Connecticut General, with the support of the TSA and Functional Capacity Evaluation notes that she is able to do five jobs, *including Ms. Marshall's previous occupation.* Connecticut General analyzed this TSA and Functional Capacity Evaluation, as well as all of the evidence in the administrative record in making its determination as clearly set forth in the administrative record/ claims file. Exhibits "23" and "30," (CM00289-292 and CBM00155-158). Plaintiff's suggestion that Connecticut General was not entitled to rely upon the conclusions of its Rehabilitation Specialist consultant is wrong under the facts and under the law, as stated above. To claim that Connecticut General did not engage in its own reviews here is inaccurate in light of this fully developed record. Plaintiff may dislike the determination made but, tellingly, has pointed to no evidence in the administrative record to refute the Functional Capacity Evaluation or the TSA. She can point to no contrary evidence as to Marshall's functionality, as none was submitted by Plaintiff. Plaintiff's argument runs from the ridiculous to the absurd when she speculates that Connecticut General concluded that she should engage in ladder climbing. Such was not within the definition of her own occupation nor those listed in the other TSA-identified jobs, although listed within her functionality. Plaintiff may not like the Functional Capacity Evaluation report, but it was her own Dr. Kang who ordered and submitted the report.

Plaintiff's recitation of her subjective symptoms, as reported to Dr. Perkins and Dr. Lutz, as aggravated by sudden movement even if lying down or sitting down, dizziness that starts with position change, etc. are all, again, self-reported complaints, early in her claim and prior to the

18

medical work-ups and conclusions that medications taken as needed relieved the symptoms. To identify the initial symptoms but fail to recognize the treatment ameliorating same is disingenuous. The evidence is substantial that Plaintiff simply does not meet the Eligibility for Benefits definition. Under the arbitrary and capricious standard of review Connecticut General's decision should not be disturbed.

Evelyn R. Flores, M.D., Plaintiff's primary neurologist, provided Lucent with a Healthcare Provider's Report, dated April 17, 2001. Dr. Flores noted that in her opinion Marshall can work with limitations and suggested that Marshall be assigned "a job that does not require long periods of neck flex[ion] or extension." Dr. Flores does *not* indicate that Marshall is disabled from working. Exhibit "14," (CBM00364).

Marshall failed to meet the requirements for Eligibility for Benefits as defined in the Lucent LTD Plan as the evidence did not support the contention that Marshall was *unable to do any job for any employer* for which she was qualified or might reasonably become qualified because of her purported sickness. The medical evidence did not support disability from performing any occupation and her own treating physicians did not restrict or limit her from performing any occupation. Notably, the Social Security determination confirmed that Marshall had not been disabled for 52 weeks as required by the Lucent LTD Plan's definition. The denial of benefits was proper. Connecticut General had Plaintiff's claim thoroughly reviewed through multiple levels, by medical consultants and occupational consultants, and with the benefit of a Functional Capacity Evaluation and a Transferable Skills Analysis.

The claims decision was made on the record before Connecticut General, amply demonstrating that Marshall did not meet the requirements for "Eligibility for Benefits" as

19

defined by the Plan and with a reasonable basis in fact supporting the decision. There was no abuse of discretion.

### 2.    Connecticut General Was Not Required to Order an Independent Medical Examination

Connecticut General was not required under the policy to order an independent medical examination prior to denying Plaintiff's claim, and its decision not to order such an examination, does not render its denial arbitrary and capricious. Leonardo-Barone v. Fortis Benefits Ins. Co., 2000 WL 33666891 *13 (E.D. Pa. Dec. 28, 2000) (Weiner, J). Plaintiff does not — and cannot — distinguish this case from Leonardo-Barone, where this Court correctly explained, in reasoning equally applicable here, as follows: "while it is true that the policy *allowed* Fortis to conduct an independent medical examination, there was no *requirement* that it do so for each claimant. *The decision to rely only upon a review of the written submissions does not render the denial arbitrary since by doing so Fortis violated no provision of the policy*." *Id.* (emphasis added in part).

The Leonardo-Barone Court explained as follows:

> The procedures used by Fortis to process [plaintiff's] claim demonstrate that it gave [plaintiff] numerous opportunities to supplement the record and gave appropriate consideration to the material supplied by [plaintiff]. Fortis actively sought additional medical information and reconsidered the claim several times. These facts lend further support to the conclusion that Fortis did not deny the claim arbitrarily.

*Id.* at *14. As in Leonardo-Barone, Connecticut General afforded Plaintiff multiple opportunities to supplement the record, actively sought additional medical information from Plaintiff and reconsidered the claim several times. As observed by this Court in Leonardo-Barone, those facts, too, "lend further support to the conclusion that Fortis did not deny the claim arbitrarily." Leonardo-Barone, 2000 WL 33666891 at *14.

20

3.    **Significant Difference in Calculus of**
      **Social Security Decision Distinguishes Same**
      **and Plaintiff's Reliance Thereon is Misplaced**

The Social Security determination here is in no way binding on Connecticut General.

Such was referenced and reviewed by Connecticut General as Plaintiff concedes.

It has been held that "[t]he calculus of decision in social security cases differs

significantly from that employed in ERISA cases." Leahy v. Raytheon Co., 2002 U.S. App.

LEXIS §25903, at *20 (1st Cir. Dec. 17, 2002). In discussing these "significant differences" the

Court noted that:

> In the former instance, Congress and the Secretary of Health and
> Human Services have established a specific framework for
> determining disability. See Shaw v. Chater, 221 F.3d 126, 132 (2d
> Cir. 2000) (summarizing the five-step progression under 20 C.F.R.
> §§ 404.1520, 416.920). Goodermote v. Sec. of HHS, 690 F.2d 5,
> 6-7 (1st Cir. 1982) (similar). This framework entails specifically
> promulgated standards, a shifted burden of persuasion, restricted
> discretion and agency involvement. ... No comparable
> combination of factors exists in ERISA cases: there is no
> specifically promulgated set of criteria, no shifted burden of
> persuasion, no restricted discretion, and no agency involvement.
> The fiduciary's decision is constrained only by the language of the
> particular plan at issue and by a judge-made adjudicative standard.

*Id.* at *21.

A Social Security award does not in itself indicate that an administrator's decision was

arbitrary and capricious. A plan administrator is not bound by the Social Security decision.

Starita v. NYCare Health Plan, Inc., 2000 U.S. Dist. LEXIS 3898, (E.D. Pa. Mar. 29, 2000) and

cases cited therein including Madden v. ITT Long Term Disability Plan, 914 F. 2d 1279, 1286

(9th Cir. 1990); Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415 (1st Cir.

2000); Russell v. Paul Revere Life Ins. Co., 148 F. Supp. 2d 392 (D. Del. 2001); Forchic v.

Lippincott, 1999 U.S. Dist. LEXIS 21419 (D.N.J. 1999). As the court held in Russell, *supra*, "a

plan administrator's decision on ERISA disability that differs from that of the SSA is not

21

arbitrary and capricious provided it is reasonable it is 'reasonable and supported by substantial evidence'". Russell, 148 F. Supp. 2d at 409 (citations omitted). "[A]n SSA award is not dispositive in determining whether an ERISA administrator's decision was arbitrary and capricious," however it may be considered as a factor. Starita, *supra* at n. 11.

Plaintiff's award of Social Security benefits is not dispositive of the issue of her entitlement to disability benefits under the terms of her insurance contract with Connecticut General.

**4.    Attorney Files Second Appeal But Files
Suit Before Second Appeal Review Completed**

On March 5, 2002 Connecticut General received correspondence from Attorney Sagot enclosing the Social Security Administration's file and asking for review of that file, threatening a lawsuit if Connecticut General continued to uphold its denial of Marshall's claim. The medical records and reports received, however, again duplicated the medical documentation already contained in Marshall's administrative record/claims file with Connecticut General. CBM00066-152. Of particular note, though, was the correspondence received from the Social Security Administration that Attorney Sagot provided, dated April 9, 2001, wherein the Social Security Administration advised, *inter alia*, that "[b]ased on all available evidence, your conditions did not prevent you from working until January 25, 2001." "We realize that your condition kept you from doing your job as an aligner, but it *did not keep you from doing other jobs* not requiring repetitive use of your hands. Based on your age of 54 and 12th Grade education, *you could have done other work*. We have therefore concluded that your disability began on January 25, 2001 and not July 9, 2000 as claimed." Exhibit "31," (CBM0069-70) (emphasis supplied). (This is further support that Plaintiff was not disabled under the LTD Plan's definition requiring, inter alia, "[y]ou must have been disabled for 52 weeks" and "[y]ou

22

must be unable to do any job for any employer for which you're qualified." Exhibit "4,"
(CBM00011)).

In response, Connecticut General wrote to Marshall on March 8, 2002 acknowledging
receipt of the additional information and advising that the claim would be forwarded to the
Disability Appeals Team in Dallas, Texas. Exhibit "32," (CBM00064-65). Thereafter, on
March 20, 2002, Connecticut General's Appeal Claim Examiner in Dallas, Texas contacted
Marshall acknowledging the request for review of her claim and *again* asking that she execute an
authorization allowing the company to speak with Attorney Sagot. Marshall was *again* asked to
submit any additional information she wished reviewed. Exhibit "33," (CBM00475-76). Prior
to Connecticut General's Dallas Appeal Team's review of Marshall's claim, and having
submitted nothing further in support of the request for a second review, Attorney Sagot and
Marshall filed suit on June 7, 2002.

Connecticut General, having received only duplicate medical information, had written to
Marshall asking her to submit any additional information for review and for authority to speak to
her attorney. Marshall chose to file suit rather than respond to Connecticut General's reasonable
requests. There was simply no disregard of Plaintiff's claim, rather, Plaintiff failed to respond.


## V.    CONCLUSION

Connecticut General's decision to deny Marshall's claim for disability benefits under the
policy was not arbitrary and capricious as a matter of law. The administrative record amply
demonstrates that Connecticut General's decision to deny benefits was supported by substantial
evidence and therefore reasonable. For all the foregoing reasons, Defendant, Connecticut
General Life Insurance Company, respectfully requests that Plaintiff's Motion for Summary
Judgment be denied and that summary judgment granted in its favor and that the Plaintiff's

Complaint be dismissed with prejudice as Connecticut General's decision in this case was not arbitrary and capricious and must be upheld as a matter of law.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

By: _____

Elizabeth A. Venditta, Esquire
Attorney I.D. No. 36000
1800 One Liberty Place
Philadelphia, PA 19103
215-864-6392

Attorneys for Defendant,
Connecticut General Life Insurance
Company

Dated: November 29, 2004

24

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BIRDA J. MARSHALL** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CONNECTICUT GENERAL LIFE** | : | **NO. 02-3662** |
| **INSURANCE COMPANY** | : | |

## CERTIFICATE OF SERVICE

I, Elizabeth A. Venditta, counsel for Defendant, Connecticut General Life Insurance Company, hereby certify that on **November 29, 2004**, the foregoing Response Brief of Defendant, Connecticut General Life Insurance Company, in Opposition to Plaintiff's Motion for Summary Judgment and this Certificate, were filed electronically and are available for viewing and downloading from the ECF system and, further, I caused a true and correct copy of same to be served upon the following counsel for the Plaintiff by placing same in the U. S. mail, first class and postage prepaid:

Stuart J. Phillips, Esquire
Phillips & Brooke, P.C.
Two Greenwood Square, Suite 225
3331 Street Road
Bensalem, PA 19020

**WHITE AND WILLIAMS LLP**

By: _____

Elizabeth A. Venditta, Esquire
Attorney I.D. No. 36000
1800 One Liberty Place
Philadelphia, PA 19103
215-864-6392

Attorneys for Defendant,
Connecticut General Life Insurance
Company

DOCS_PH 1666748v1