IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| BIRDA J. MARSHALL | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CONNECTICUT GENERAL LIFE | : | |
| INSURANCE COMPANY | : | NO.  2:02-CV-03662-LDD |

## MEMORANDUM OPINION

J. Davis                                                                                          June 17, 2005

      Presently before the Court are cross-motions for summary judgment on an action for

long-term disability benefits under the Employee Retirement Income Security Act of 1974

("ERISA").  For the following reasons, this Court grants defendant's motion for summary

judgment (Doc. No. 14); and denies plaintiff's motion.  (Doc. No. 17).

## I.    Factual and Procedural History

      Plaintiff Birda J. Marshall ("plaintiff") was an employee of Lucent Technologies, Inc.

("Lucent").  (See Compl., at ¶ 7).  Since 1983, plaintiff worked as a "aligner," which involved

use of a microscope on an assembly line.  (Id.).  Plaintiff was covered under a group long-term

disability plan (the "LTD plan").  The LTD plan is funded by the Lucent Benefit Trust ("Lucent

Trust"), and administered by Connecticut General Life Insurance Company ("defendant").  (See

Compl., at ¶ 2).

      In June 2000, plaintiff began to experience severe headaches, dizziness, and nausea.

Plaintiff was subsequently diagnosed with herniated and bulging discs of the cervical spine.  (See

Compl., at ¶ 13, 17).  On July 9, 2000, plaintiff applied for short term disability benefits under a

plan sponsored by Lucent ("STD plan").  (Id., at ¶ 14).  Plaintiff received short-term disability

benefits by Lucent for a period of 52 weeks.  (Id.).

Plaintiff also applied for disability benefits with the Social Security Administration

pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq*..  The Social Security Administration

ultimately granted plaintiff's application for disability benefits, effective January 25, 2001.  (See

Pl. Ex. 4, at CBM00166).

In May 2001, plaintiff submitted an Employee's Statement of Claim to defendant for

long-term disability benefits under the LTD plan.  (See Def. Ex. 5, at CBM00473-474).  (See

Def. Ex. 9, at CBM00451).  The Employee's Statement of Claim indicated that plaintiff had been

absent from work since July 9, 2000, as a result of severe headaches, dizziness, nausea, and neck

pain.  (Id.).  Plaintiff also included executed Reimbursement Agreements, an Authorization to

Release Information, and a Social Security Notice of Award. (Id., at CBM00446-450).  Prior to

making a decision, defendant requested and received additional medical documentation from

plaintiff's treating physicians, healthcare providers, and employer.  (See Def. Ex. 11, at

CBM00440-441).

## A.    The LTD Plan

The LTD plan imposes certain eligibility requirements for disability benefits.  These

requirements mandate that an applicant, *inter alia*, must:  (i) be disabled for 52 weeks; (ii) be

unable to do any job, for which the applicant is qualified, for any employer, other than a job that

pays less than 50% of the applicant's eligible base pay; and (iii) be under a physician's care and

following the prescribed course of treatment.  (See Def. Ex. 4, at CBM00011).  In other words,

so long as an applicant can perform any job for any employer that pays more than 50% of the applicant's pre-disability salary, the applicant is not disabled under the terms of the LTD plan. Resolving any ambiguity as to this methodology, the LTD plan expressly states that its disability analysis may differ from that of other disability determinations, including a social security disability analysis. (Id.).

The LTD plan grants the plan administrator full discretionary authority and power, *inter alia*, to control and manage all aspects of the LTD Plan, to determine eligibility for LTD Plan benefits, and to interpret and construe the terms and provisions of the LTD Plan. (Id., at CBM00016-17). Lucent delegated its responsibility for claims administration to defendant, a CIGNA company. (Id., at CBM00014, CBM00023; Declaration of Richard Lodi, Senior Operations Specialist). Defendant administered, but did not fund, the LTD benefits payable through the LTD plan. (Id., at CBM00016).

## B.   Evidence Before the Plan Administrator

Prior to making a decision on plaintiff's claim, defendant acquired the following information: a Functional Capacity Evaluation Report ("FCE Report") that identified plaintiff's physical limitations in the work setting; medical records from plaintiff's primary physicians; medical records from all additional physicians who treated plaintiff; a Transferable Skills Analysis ("TSA") to determine if plaintiff's skills and physical limitations would permit her to work in other positions of employment; and the Social Security Administration's letter awarding plaintiff disability benefits. (See Def. Ex. 23, at CBM00289-292).

### 1.   FCE

Plaintiff supplied a Functional Capacity Evaluation Report ("FCE"), dated March 21,

2001.  (See Def. Ex. 14, at CBM00382-386).  The FCE was performed by Lynda Powell, a

physical therapist, at the behest of one of plaintiff's treating physicians, Dr. Kang, who, at the

time, "had no clear idea of diagnosis" of plaintiff's symptoms of dizziness and headaches.  (Id;

see also id., at CBM00407).   The FCE Report found that plaintiff did not have trouble with

"constant sitting," but that plaintiff had difficulty working overhead and sitting with her head

bent forward.  (Id., at CBM00384).  The FCE Report concluded that plaintiff could sit for 5.5

hours or more, stand for up to 2.5 hours (occasionally), and walk for 2.5 to 5.5 hours (frequently)

in an eight hour day.  (Id.).  The FCE Report further concluded that plaintiff could lift up to 20

pounds from floor to waist, up to 10 pounds from waist to overhead, and up to 15 pounds

horizontally (on an occasional basis).  (Id.).  The FCE Report recommended additional therapy to

facilitate plaintiff's return to work.

### 2.     Medical Records From Plaintiff's Primary Physicians

On June 19, 2001, defendant received plaintiff's Disability Questionnaire, wherein

plaintiff reiterated her symptoms of dizziness, nausea, neck pain, and headaches.  Plaintiff

identified Dr. Flores and Dr. Kang as the physicians she saw most regularly.  (See Def. Ex. 15, at

CBM00358).

Defendant reviewed the records and report of Dr. Joseph Kang, plaintiff's neurosurgeon.

In response to a questionnaire sent by defendant, Dr. Kang identified July 9, 2000 as the date on

which plaintiff was first unable to work, and answered "unknown" to the question of when

plaintiff would be able to return to work.  (See Def. Ex. 19, at CBM00325-328).  Dr. Kang

diagnosed plaintiff with headaches, dizziness, neck pain, loss of balance, hand pain, and trigger

finger.  (Id., at CBM00325).  Dr. Kang used the FCE Report to identify several physical

limitations on plaintiff's ability to work, and, in fact, referred defendant to the FCE Report rather than filling out a physical ability assessment of plaintiff.  (Id., at CBM00326-328).  Dr. Kang also included records showing an "essentially negative" MRI of plaintiff's brain on March 7, 2001.  (Id., at CBM00345).  Finally, Dr. Kang submitted a Healthcare Provider's Report, in which he indicated that plaintiff was disabled, but did not indicate whether plaintiff could work with limitations.  (Id., at CBM00365-366, 368).

Dr. Evelyn Flores, plaintiff's neurologist, submitted an Attending Physician's Statement of Disability.  (See Pl. Ex. 4, at CBM00452-453).  In this report, dated April 17, 2001, Dr. Flores stated that plaintiff was totally disabled from her regular work, based upon chronic headaches and spine disease.  (Id.).  However, Dr. Flores concluded that plaintiff was not disabled from performing other work, and that plaintiff would be a suitable candidate for trial employment at another job, so long as the job did not require undue neck extension or lifting greater than 10 pounds. (Id.).

Dr. Flores also submitted a Healthcare Provider Report.  Consistent with her Attending Physician's Statement of Disability, Dr. Flores again opined that plaintiff could work in a job that does not require long periods of neck extension.  (See Def. Ex. 14, at CBM00364).

Finally, Dr. Flores submitted a letter dated April 17, 2001 to Dr. Kang.  In this letter, Dr. Flores reiterated that although spine x-rays showed degenerative joint and disc disease, two brain MRIs searching for the biological origin of plaintiff's headaches were "essentially normal."  (See Def. Ex. 19, at CBM00339).  Dr. Flores also stated that, as of April 16, 2001, plaintiff had "learned to treat the different aspects of her headache" with prescription drugs. (Id.).

### 3.    Additional Records from Treating Physicians

Defendant received records from additional physicians who treated plaintiff.   Dr. James Kline submitted healthcare provider reports from August through October 2000, diagnosing plaintiff with chronic headaches and cervical problems and finding that plaintiff could not work with limitations.  (Id., at CBM00371-374).  In the August 1, 2000 report, Dr. Kline noted that the etiology of plaintiff's "chronic headaches" was "unclear."

Defendant also received responses to a disability questionnaire, as well as complete medical records, from Dr. Robert C. O'Reilly, a head and neck specialist.  (See Def. Ex. 18, at CBM00346-353).  Dr. O'Reilly treated plaintiff on one date, February 12, 2001, concerning plaintiff's headaches, but was unable to provide conclusions as to her physical restrictions or her disability status.  (Id.).  In a report dated February 12, 2001, Dr. O'Reilly hypothesized that plaintiff's headaches were compatible with atypical migraines, and recommended another consultation with a neurologist and anti-migrainous medications.  (Id.).

On July 30, 2001, defendant received the records and report of Dr. P.G. Perkins.  In his Healthcare Provider Statement, Dr. Perkins diagnosed plaintiff with degeneration of her cervical disc and trigger finger, concluding that plaintiff was disabled from working and that plaintiff would not be able to work with limitations.  (See Def. Ex. 14, at CBM00369).  Dr. Perkins also filled out a disability questionnaire, in which he diagnosed plaintiff with cervical disc degeneration and trigger finger, accompanied by generalized headaches and dizziness, and noted that plaintiff was first unable to work on September 14, 2000.   (See Def. Ex. 22, at CBM00294-296).  Dr. Perkins' records indicated that he discharged plaintiff from his care on March 15, 2001, on the basis that he could do "nothing further from a musculoskeletal point of view." (Id., at CBM00295).  Dr. Perkins was unable to complete a physical ability assessment for plaintiff,

based upon the lack of an "F.C.E." (Id., at CBM00297-298).   Included with Dr. Perkins' records was a "normal" whole body bone scan performed on September 21, 2000 (CBM00313); a cervical spine x-ray report of August 22, 2000 demonstrating moderate degenerative disc disease of the cervical spine (CBM00316-317); a "normal" brain MRI dated September 6, 2000 (CBM00318); and a September 14, 2000 letter in which Dr. Perkins stated that he "was not all clear as to the cause of the headaches, dizziness or leg numbness and I find it difficult to relate all this to disc bulging in the cervical spine" (CBM00314-315).

### 4.   TSA

On July 5, 2001, defendant hired Mark Reznik, a rehabilitation specialist, M.Ed., CRC, CCM, to perform a Transferable Skills Analysis (the "TSA") to determine if plaintiff could perform other occupations despite her physical limitations and, if so, to identify these occupations.  The TSA identified five jobs falling within a "light" classification that plaintiff could perform based upon her physical limitations.  (See Def. Ex. 20, at CBM00319-320).  These jobs included: epitazial reactor operator; ion implant machine operator; electronics assembler; printed circuit board assembler; and a tester of wafer substrates.  (Id.).

### C.   Review and Recommendation

On June 28, 2001, defendant reviewed plaintiff's claim with a medical consultant and an occupational consultant.  The medical consultant did not feel that the medical documentation supported a finding of total disability under the LTD plan.  (See Def. Ex. 17, at CBM0049).  The occupational consultant recommended a complete TSA. (Id.).

Following the results of the TSA, defendant again reviewed the file with a medical and an occupational consultant on July 20, 2001.  (See Def. Ex. 21, at CBM0048).  Both consultants

recommended denying the claim, based upon the conclusion of the TSA that plaintiff could perform jobs with a salary of more than 50% of plaintiff's pre-disability salary.  (Id.).

### D.      Denial Of Coverage

On August 20, 2001, defendant sent plaintiff a letter denying her claim for long term disability benefits.  (See Ex. 23 to Def. Mot, at CBM00289-291).   Although the August 20, 2001 letter acknowledged plaintiff's inability to perform her current occupation, due to cervical spine disease and migraine headaches, defendant found that plaintiff would be able to perform other types of work requiring limited neck-movement and lifting.  (Id.).   Defendant based its decision upon several pieces of evidence: (i) Dr. Flores' Report, attached as the Attending Physician's Statement of Disability; (ii) the FCE Report; (iii) an April 17, 2001 letter to Dr. Kang from Dr. Flores indicating that plaintiff learned to treat aspects of her headaches with prescription medication; (iv) the TSA; (v) plaintiff's Social Security Disability Notification; and (vi) medical documentation from Dr. O'Reilly.  (Id.).

### D.      Post-Denial Review

On November 2, 2001, defendant received a letter written on behalf of plaintiff seeking an appeal from the denial of benefits.  (See Def. Ex. 24, at CBM00281-282).   Defendant acknowledged plaintiff's appeal in writing, and emphasized that it was plaintiff's "responsibility to provide any additional information that she feels will support her appeal for long-term disability benefits."  (See Def. Ex. 25-26, at CBM00280, 278-279).   On January 15, 2002, defendant received from plaintiff's attorney the allegedly supplemental information, which included the medical records of Dr. Kang, Dr. Perkins, Dr. Flores, Dr. Lutz, and Dr. O'Reilly.  (See Def. Ex. 28, at CBM00162-273).   On December 26, 2001, defendant's appeal team denied

plaintiff's appeal, noting that "no additional information regarding claimant['s] functionality has been provided on appeal." (See Def. Ex. 29, at CBM00161).

Plaintiff again sought review of this decision, enclosing for defendant's review the Social Security Administration's file concerning plaintiff's claim. Defendant wrote to plaintiff on March 8, 2002, acknowledging receipt of the additional information and notifying plaintiff that her claim would be sent to a Disability Appeals Team in Dallas, Texas. (See Def. Ex. 32, at CBM00064-65). On March 20, 2002, defendant asked plaintiff both to execute an authorization to allow defendant to speak with plaintiff's attorney and to submit any additional information she wished reviewed. (See Def. Ex. 33, at CBM00475-76). Prior to any further review of plaintiff's claim, plaintiff filed suit against defendant.

### E.    Complaint

Plaintiff filed a complaint on June 7, 2002 against defendant for the wrongful denial of long-term disability benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.. (Doc. No. 1). The caption of the complaint was amended to dismiss Lucent, Lucent Benefit Trust, and CIGNA Insurance Company as defendants. (Doc. No. 5).

On October 28, 2004, Defendant filed a motion for summary judgment. (Doc. No. 14). Plaintiff's motion for summary judgment was filed the following day, on October 29, 2004. (Doc. No. 17). On November 29, 2004, Defendant filed a brief in opposition to plaintiff's summary judgment motion. (Doc. No. 18).

### II.   Standard

Two standards of review are applicable to the resolution of the parties' cross-motions for

summary judgment: the summary judgment standard pursuant to Federal Rule of Civil Procedure 56; and the arbitrary and capricious standard under ERISA.  See, e.g., Byrd v. Reliance Standard Life Ins. Co., 2004 WL 2823228, at *1 (E.D. Pa. Dec. 7, 2004) (describing interaction between two standards).

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986).  Only facts that may affect the outcome of a case are "material."  Anderson, 477 U.S. 248.  All reasonable inferences from the record are drawn in favor of the non-movant. See id. at 256.

The movant has the initial burden of demonstrating the absence of genuine issues of material fact.  This "burden . . . may be discharged by 'showing' that there is an absence of evidence to support the non-moving party's case."  Celotex Corp. v. Catreet, 477 U.S. 317, 323 (1986).  Once this burden is discharged, the non-movant must then establish the existence of each element on which it bears the burden of proof.  See J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990).  A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in her favor.  Anderson, 477 U.S. at 248; Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989); Woods v. Bentsen, 889 F. Supp.

179, 184 (E.D. Pa. 1995).

ERISA does not specifically set forth the standard for review for an action brought under 29 U.S.C. § 1132(a)(1)(B) by a participant alleging denial of disability benefits. However, both parties agree that when a plan governed under ERISA provides the administrator with discretionary authority to determine benefit eligibility, a district court must review the determination under an arbitrary and capricious standard.[1]   See, e.g., Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111-112 (1989).   Furthermore, because Lucent Trust (rather than defendant) funds the LTD plan, because plaintiff's employer delegated authority to defendant to administer the LTD plan, and because plaintiff does not argue structural conflicts of interest in the decision-making process, plaintiff implicitly concedes that a deferential, rather than a heightened, arbitrary and capricious standard applies to plaintiff's claim.  See, e.g., Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377, 390-394 (3d Cir. 2000).

Under a deferential arbitrary and capricious standard, this court may not reverse the administrator's decision denying disability benefits unless that decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Abnathya v. Hoffman-LaRouche, Inc., 2 F.3d 40, 45 (3d Cir. 1993).  The scope of this review is "narrow," and a "court is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits." Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439 (3d Cir. 1997) (internal quotations omitted).

---

[1] Plaintiff concedes that the Court should "apply the arbitrary and capricious standard," thereby permitting the Court to reverse the plan administrator's decision only if "unsupported by substantial evidence or erroneous as a matter of law."  (See Pl. Mot., at 8) (internal citations omitted).

11

A.      **Plaintiff's Motion for Summary Judgment**

Plaintiff contends that defendant's disability determination was arbitrary and capricious, as expressed through the August 20, 2001 denial letter, challenging the quality and quantity of the evidence upon which defendant relied in making its determination.  First, plaintiff argues that the TSA was not supported by substantial evidence.  (See Pl. Mot., at 11-13).   Second, plaintiff argues that defendant's reliance on the records of plaintiff's neurologist, Dr. Flores, was selective and self-serving, and that a review of the entirety of Dr. Flores' diagnoses undermines the validity of the TSA and the non-disability determination.  (Id., at 14).  Third, plaintiff argues that defendant's analysis was insufficient because defendant failed to refer plaintiff to an independent physician.  (Id., at 14-15).  Fourth, plaintiff implies that defendant failed to give appropriate weight to the finding of disability by the Social Security Administration.  (Id., at 15).   Finally, plaintiff contends that defendant failed to review additional medical documentation provided by plaintiff's counsel, despite receipt of these materials.  (Id.).

The Court rejects each of plaintiff's arguments, and finds that plaintiff has failed to establish her entitlement to long-term disability benefits under the LTD plan as a matter of law.

1.      **TSA**

Plaintiff argues that the TSA, which defendant principally relied upon its is disability determination, was flawed for several reasons.   Plaintiff contends that: (i) the author of the TSA failed to act independently of defendant's influence; (ii) plaintiff's medical records contradict the conclusions of the FCE Report, which were relied upon in the TSA; and (iii) the jobs prescribed by the TSA fail to account for plaintiff's physical limitations, as described in plaintiff's medical records.  (See Pl. Mot., at 11-13).

12

### a.    Bias

Plaintiff argues that the TSA was compromised by virtue of its author, Marion Reznik, a rehabilitation specialist, who had a "clear understanding of the standards necessary to preclude the claim." (Id., at 15). Plaintiff's contention seems to be that Mr. Reznik should have conducted the TSA without knowledge of the LTD plan's eligibility criteria.

This contention is easily dismissed. As defendant notes, it makes little sense to conduct a TSA in a vacuum, particularly because knowledge of the salary requirements of the LTD plan's definition of "eligibility," just like knowledge of the plaintiff's skills, education, and physical abilities, is critical to understanding whether plaintiff has transferrable skills to perform other occupations that would render plaintiff ineligible for benefits under the LTD plan. Furthermore, knowledge of a particular definitional requirement (ie., definition of "eligibility" under LTD plan) hardly constitutes evidence that a particular analysis (ie., the TSA) predicated upon such a definition has been performed mendaciously. Indeed, plaintiff has presented no evidence that Mr. Reznik performed the TSA in an inequitable manner, such as by deviating from TSA protocol, in an effort to deny disability benefits to plaintiff. Consequently, this Court finds no basis to conclude that the TSA's methodology was corrupt, or that defendant's reliance on the conclusions of the TSA was unreasonable.

### b.    Lack of Medical Evidence

Plaintiff broadly contends that plaintiff's medical records contradict the findings of the FCE Report, and, by implication, the TSA, which relied upon the FCE Report. However, plaintiff's memorandum in support of its summary judgment motion only identifies three specific pieces of evidence that the FCE, and, hence, the TSA, failed to consider: (i) Dr. Flores' 10-pound

13

weight restriction; (ii) reference by Dr. Charles Lutz, an ENT consult, in a letter to Dr. Kang that plaintiff's dizziness is "severe" and "interferes with daily activities"; and (iii) a statement by Dr. Perkins that plaintiff experiences "dizziness and light headedness which is a very major problem for her."  (See Pl Mot., at 13).

Plaintiff is correct in pointing out that the FCE did not universally incorporate Dr. Flores' 10-pound weight restriction.[2]  However, the discrepancy between Dr. Flores' weight restriction and that of the FCE Report does not discredit the reliability of the FCE's conclusions.  The FCE was an independent test performed by a neutral evaluator, a physical therapist, on March 21, 2001.  In fact, the FCE was ordered by one of plaintiff's treating physicians, Dr. Kang, because he was unable to fashion a clear diagnosis based upon plaintiff's reported symptoms of dizziness, nausea, and headaches.  (See Def. Ex. 14, at CBM00407, CBM00382).[3]  Furthermore, because a plan administrator need not "accord special weight to the opinions of a claimant's physician," defendant was entitled to rely upon the FCE's conclusions in its disability determination, rather than the limitation determination of Dr. Flores, plaintiff's treating physician.  See, e.g., Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation").   Furthermore, while not crediting Dr. Flores' conclusions concerning plaintiff's capacity to lift weight, defendant did endorse Dr. Flores'

---

[2]The FCE concluded that plaintiff was capable of "lifting up to twenty pounds from floor to waist, up to ten pounds from waist to overhead, and up to fifteen pounds horizontally and on an occasional basis."  (Def. Ex. 20, at CBM00319).

[3]The fact that Dr. Kang ordered the FCE and that a neutral therapist performed the FCE based upon this recommendation belies the alleged illegitimacy of the FCE and its conclusions. (Id.).

14

conclusions concerning plaintiff's cervical spine disease, her neck limitations, and her inability to perform the material duties of her current occupation as "aligner."  Finally, plaintiff offers no evidence to suggest that the failure to incorporate Dr. Flores' weight restriction in the FCE renders plaintiff unable to perform the jobs prescribed by the TSA.  Accordingly, although (some of) the findings of the FCE Report contradicted the weight-lifting limitations advanced by Dr. Flores, this does not undermine the reasonableness of the FCE Report, the TSA, or defendant's denial of coverage.

Second, this Court also rejects plaintiff's contention that defendant ignored the import of the statements by Dr. Lutz and Dr. Perkins.  (See Pl. Ex. 4, at CBM00331-332, CBM00333-334).  These statements are a redescription of plaintiff's subjective complaints.  They do not document objective medical evidence of a permanent disability.   Nor do they constitute the objective conclusions of plaintiff's doctors.  In fact, in the September 4, 2000 letter, Dr. Perkins admitted that he was "not at all clear as to the cause of the headache [sic], dizziness, or leg numbness" and that he found "it difficult to relate all this to disc bulging in the cervical spine." (Id., at CBM00332).  Perhaps more importantly, plaintiff fails to demonstrate how the conclusory medical acknowledgment of the "severity" and "problematic" nature of plaintiff's symptoms of dizziness and headaches undermines the validity of the FCE Report or the TSA, both of which recognized the physical limitations stemming from plaintiff's physical maladies.   Phrased another way, plaintiff fails to demonstrate why the statements of Dr. Kang and Dr. Lutz translate into complete work preclusion within the meaning of the LTD Plan.  Consequently, the failure to mention expressly these references in the FCE, the TSA, or the denial analysis does not render defendant's decision arbitrary and capricious as a matter of law.

15

### c.      Job Descriptions

Plaintiff contends that a cursory comparison of the descriptions of the jobs prescribed by the TSA with plaintiff's symptoms highlights the unfeasibility of the TSA.  In particular, plaintiff contends that each of the prescribed occupations requires intense "work involving sustained concentration, using small objects handled with tweezers or in reliance on microscopes, vacuum wands and similar implements, as well as repetitive bending from the neck."  (See Pl. Mot., at 12).  The incompatibility between the physical requirements of the prescribed occupations and plaintiff's symptoms, in turn, underscores the inadequacy of the TSA and the lack of substantial evidence justifying defendant's denial of benefits.

On its face, plaintiff's argument sounds appealing.  The descriptions of the jobs prescribed by the TSA seem to require some degree of neck-bending similar to that of plaintiff's occupation as an aligner, which defendant concedes plaintiff is currently disabled from performing.  (See Def. Mot., at 18).  However, plaintiff fails to provide evidentiary support beyond a cursory comparison between the technical description of plaintiff's former job and the employment opportunities prescribed by the TSA.  For instance, plaintiff fails to submit evidence, such as expert testimony, refuting the TSA's conclusions concerning potential occupations and their compatibility with plaintiff's FCE.  Nor has plaintiff undermined the credibility of the FCE, the basis for the TSA's findings.  In fact, plaintiff fails to present any specific evidence to support a finding that plaintiff would not be able to perform the jobs prescribed by the TSA because of her physical limitations; or, that defendant's concession of disability as to plaintiff's job as an aligner, based upon an analysis of the physical requirements of that occupation, renders plaintiff unable to perform each and every job prescribed by the TSA,

16

based upon the physical requirements of those positions.   Without such specific evidence, the Court cannot say as a matter of law that the TSA's conclusions are unreasonable and that defendant's denial of coverage was unsupported by substantial evidence.

### 2.        Reliance on Dr. Flores' Reports

Plaintiff next contends that defendant both relied upon and interpreted various reports by Dr. Flores, plaintiff's treating neurologist, in a selective and self-serving manner.  (See Pl. Mot., at 14).  Specifically, plaintiff argues that defendant misinterpreted Dr. Flores' report and then used this misinterpretation to deny plaintiff's request for disability benefits. (Id.).

Plaintiff first suggests that defendant intentionally misinterpreted Dr. Flores's statement, contained in an April 17, 2001 letter to Dr. King, that plaintiff "had learned to treat the different aspects of her headache" with pharmaceutical drugs.  (See Pl. Ex. 4, at CBM00339-340). Plaintiff is correct in noting that defendant relied upon this statement to conclude that plaintiff was not totally disabled.  (See Def. Ex. 23, at CBM00291).  Plaintiff is also correct in arguing that this comment does not indicate whether treatment was successful in rendering plaintiff fit to work.   However, nowhere in the August 2001 denial letter does defendant state that plaintiff's medical history reveals consistent success in alleviating headaches through medication.  Instead, the August 2001 denial letter only relied upon Dr. Flores' statement for the conclusion that plaintiff's headaches were treatable through a regular intake of medication.[4]  Accordingly, because plaintiff attributes to defendant a conclusion that was never drawn, this Court cannot

---

[4]The letter concluded: "While you do have headaches and dizziness, you are able to treat these conditions with medication."  (See Def. Ex. 23, at CBM00291).  This conclusion was also consistent with plaintiff's comment on September 7, 2000 that drugs were helping to alleviate the scope and frequency of her headaches (See Pl. Ex. 4, at CBM00394).

find defendant's ineligibility determination unreasonable on the basis of its consideration of Dr. Flores' statement.

Plaintiff also suggests that defendant selectively adopted certain conclusions in Dr. Flores' Statement of Disability, which accompanied plaintiff's application for LTD benefits, while ignoring other conclusions antithetical to defendant's interest in denying coverage. (See Pl. Mot., at 14). This Court disagrees. In the Attending Physician's Statement of Disability, dated May 17, 2001, Dr. Flores averred that plaintiff was totally disabled from regular work, but not from all other work. (See Pl. Ex. 4, at CBM00452-453). Specifically, Dr. Flores stated that plaintiff would be a suitable candidate for trial employment at another job, with the limitation that plaintiff engage in no undue neck extension or lifting greater than 10 pounds. (Id.). This report is consistent with a later healthcare provider's report furnished by Dr. Flores, dated April 17, 2001, in which Dr. Flores concluded that although plaintiff suffered chronic headaches, dizziness, nausea, and degenerative spine disease, plaintiff could work in a position that did not require long periods of neck extension. (See Def. Ex. 14, at CBM00364). These reports from plaintiff's treating physician provide strong support for defendant's denial of coverage based upon plaintiff's capacity to perform other work outside of her position as an aligner. Furthermore, plaintiff has failed to identify what portions of Dr. Flores' Statement of Disability, or of the various medical reports, support plaintiff's contention that she was totally disabled within the meaning of the LTD plan. See Fed. R. Civ. P. 56(c) (summary judgment only appropriate when movant demonstrates no genuine issue of material fact and entitlement to judgment as a matter of law). Consequently, this Court finds that Dr. Flores' reports reinforces, rather than problemmatizes, defendant's decision to deny benefits on the basis of plaintiff's lack

18

of total disability.

### 3.      Independent Medical Examination

Plaintiff argues that defendant's failure to refer plaintiff to an independent physician for a post-application physical examination highlights the arbitrariness of defendant's denial of disability benefits.  (See Pl. Mot., at 14).

Plaintiff's argument is flawed.  When it does not transgress any provision of the LTD policy (or the ERISA statute), the decision to rely upon written submissions, rather than ordering an independent medical examination, fails to render a plan administrator's decision arbitrary and capricious.  See, e.g., Leonardo-Barone v. Fortis Benefits Ins. Co., 2000 WL 33666891, at *13 (E.D. Pa. Dec. 28, 2000) (plan administrator's refusal to conduct independent medical examination did not render decision arbitrary and capricious, despite provision in policy that permitted plan administrator to conduct such an examination).  In this instance, defendant chose to rely upon the submitted medical documentation, including reports from plaintiff's treating physicians and the conclusions of the FCE and TSA.  See, e.g., Sapovits v. Fortis Benefits Ins. Co., 2002 WL 31923047, at *15 (E.D. Pa. Dec. 30, 2002) ("decision to rely upon a review of the written reports" of non-treating physicians does not render denial arbitrary when defendant violates no policy provision).  This methodology was not prohibited by the LTD plan or ERISA.  Accordingly, because the LTD plan did not mandate that claimants undergo an independent medical examination, defendant's denial of benefits without such an examination was not arbitrary and capricious.

### 4.      Social Security Determination

Plaintiff implies that defendant's disability decision failed to give proper deference to the

Social Security Administration's finding that plaintiff was disabled within the meaning of the

Social Security Act, 42 U.S.C. § 405 *et seq*.. (See Pl. Mot., at 15).

This Court rejects this position.  A plan administrator determining whether a claimant is

totally disabled for purposes of ERISA benefits is not bound by a finding of disability by the

Social Security Administration.  See, e.g., Black & Decker Disability Plan v. Nord, 538 U.S. 822,

833 (2003) (recognizing differences between social security disability program and ERISA

benefit plans and emphasizing that "employers have large leeway to design disability and other

welfare plans as they see fit"); Das v. Unum Life Ins. Co. Of America, 2005 WL 742444, at *12

(E.D. Pa. March 31, 2005) (upholding termination of long term disability benefits under ERISA

despite Social Security Administration's disability finding because "ERISA plan administrator is

bound by contract terms while the Social Security Administration is bound by uniform

nationwide guidelines").  Indeed, while consideration of a finding by the Social Security

Administration may prove useful, a plan administrator's failure to adopt such a finding does not

render her decision arbitrary and capricious.  Stith v. Prudential Ins. Co. Of America, 356

F.Supp.2d 431, 440 (D.N.J. 2005) ("there is no legal requirement that a plan administrator must

specifically address the decision of an administrative law judge when deciding whether a plaintiff

is to be considered totally disabled"); Marx v. Meridian Bancorp., Inc., 2001 WL 706280, at *5

(E.D. Pa. June 20, 2001) (upholding denial of disability benefits despite SSA finding of disability

because "SSA finding is one factor among many that may be considered when granting disability

benefits").

In this instance, defendant expressly considered plaintiff's award of disability benefits

under the Social Security Act, as well as the Social Security Administration's determination of

the timing of plaintiff's disability. (See Def. Ex. 23, at CBM00290). Defendant's refusal to adopt the Social Security Administration's finding, which was reached under an analysis conceptually and methodologically distinct from that prescribed by the LTD plan, does not, standing alone, render defendant's decision arbitrary and capricious. Russell v. Paul Revere Life Ins. Co., 148 F.Supp.2d 392, 409 (E.D. Pa. 2003) ("findings of an administrative law judge have no bearing on this court's determination whether the decision to deny benefits was arbitrary and capricious").

### 5.      Failure to Consider Supplemental Materials

Lastly, plaintiff argues that defendant's failure to consider supplemental materials submitted by plaintiff's counsel reinforces the allegedly glaring deficiencies in defendant's denial of benefits. (See Pl. Br., at 15). Plaintiff does not identify what materials defendant failed to consider. Nor does plaintiff analyze the impact that the consideration of these materials would have had on the ultimate disposition of plaintiff's claim. Furthermore, plaintiff fails to rebut defendant's response that these supplemental materials "duplicated the medical documentation already contained in [plaintiff's] administrative record/claims file with [defendant]." (See Def. Br. In Opp'n., at 22). Finally, the Court notes that defendant accepted all post-denial submissions and consistently offered plaintiff the opportunity to provide additional information. (See Def. Ex. 32, at CBM00064-65; Def. Ex. 33, at CBM00475-76). Accordingly, plaintiff fails to support its allegation that defendant refused to consider relevant supplemental materials after initially denying plaintiff's claim.

### B.      Defendant's Motion for Summary Judgment

The reasons for denying plaintiff's motion for summary judgment support the granting of

21

defendant's motion.  Defendant's conclusion that plaintiff was disabled from performing her job as aligner, but not from performing other types of work, was based upon a careful review of the record, and was supported by substantial evidence.  First, the medical reports of Dr. Flores, plaintiff's primary neurologist, indicated that plaintiff was not totally disabled within the meaning of the LTD Plan and could perform work with neck and lifting limitations.  (See Def. Ex. 14, at CBM00364; Pl. Ex. 4, at CBM00452-453).  Second, the FCE, performed by an independent physical therapist, found that plaintiff had no trouble with "constant sitting," so long as overhead and neck movements were limited, and concluded that plaintiff could sit for 5.5 hours or more, stand for 2.5 hours, and walk for 2.5 to 5.5 hours in an eight hour day.  (See Def. Ex. 14, at CBM00382-386).  The FCE was recommended and endorsed by one of plaintiff's primary physicians, Dr. Kang, who, in fact, referred defendant to the FCE Report in his disability questionnaire.  (Id., at CBM00407).  Third, the TSA, performed by a rehabilitation specialist, identified several jobs with the appropriate salary requirement that plaintiff could perform according to the limitations contained in the FCE.  (See Def. Ex. 20, at CBM00319-320), Fourth, no medical evidence in the record links plaintiff's symptoms of headaches and dizziness to the objective diagnosis of degenerative cervical disc disease.  (See Def. Ex. 14, at CBM00373; Def. Ex. 19, at CBM00331-332, CBM00345).   Fifth, the medical records suggest that plaintiff's headaches are treatable through prescription medication, albeit with varying degrees of success. (See Def. Ex. 19, at CBM00331, CBM00339-340, CBM00335; Pl. Ex. 4, at CBM00394). Finally, indicative of the thoroughness of defendant's decision-making process, defendant reviewed the record with a medical consultant and occupational consultant on two separate occasions prior to denying coverage. (See Def. Ex. 17, at CBM00049; Def. Ex. 21, at

22

CBM00048).

Based upon this evidence, no reasonable jury could find erroneous defendant's conclusion that plaintiff was ineligible for disability benefits within the meaning of the LTD plan, as plaintiff was not precluded from performing all jobs with a salary of greater than 50% of plaintiff's pre-disability salary.  Indeed, plaintiff has failed to raise a genuine issue of material fact as to plaintiff's entitlement to long-term disability benefits.  Accordingly, applying the arbitrary and capricious standard of review, this Court finds as a matter of law that defendant's determination that plaintiff was not totally disabled within the meaning of the LTD plan is supported by substantial evidence.

## III.    Conclusion

For the foregoing reasons, this Court denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


BIRDA J. MARSHALL                      :          CIVIL ACTION
                                       :
                                       :
              v.                       :
                                       :
                                       :
CONNECTICUT GENERAL LIFE               :
INSURANCE COMPANY                      :          NO.  2:02-CV-03662-LDD


**<u>ORDER</u>**

AND NOW, upon consideration of the parties' cross-motions for summary judgment, it is

hereby ORDERED as follows:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 17) is DENIED.

2.      Defendant's Motion for Summary Judgment (Doc. No. 14) is GRANTED.

3.      The Clerk of Court is directed to close this matter for statistical purposes.


                              BY THE COURT:

                              /s/

                              Legrome Davis, J.


24